May it please the court, counsel, what we have here is a little more mundane than the last case. We're talking about qualified immunity of a police officer at the pleading level in a 1983 case. And as the United States Supreme Court has indicated, this is a fact-specific inquiry. And our position is that the facts that have been pled are not well pled and that they are so speculative that they cannot be taken as true. And I would like to lay out the facts that are not based on speculation. On June 23, 2015, Daniel Antonio Ramirez was 30 years old and lived with his family at 234 Liberty Street in El Paso, Texas. Daniel was 5'4 inches tall and weighed only 137 pounds. Prior to June 23, 2015, Daniel routinely exhibited signs of mental health issues. His parents had called the police a number of times before June 2015 due to his threats of suicide. On June 23, 2015, Maria Ramirez called 911 reporting that her son, Daniel, was threatened to kill himself and needed help. Maria told 911 dispatch that Daniel was threatening to hang himself, but she did not tell dispatch that he had a weapon because he did not have a weapon. The first officer to respond to the call was Officer Escajeda. He had limited experience as an officer and no training on how to engage persons suffering from mental health issues. Mr. Darnell, we've read the complaint, so if that's all you're going to do, we don't need that again. No, sir. My point was— It sounds to me as though what you're really doing is just questioning the credibility of the factual allegations in the complaint. No, sir. What we're saying is that the real allegations in the complaint are based on what—it simply says this is what Officer Escajeda saw, this is what Officer Escajeda felt. That is his eyes and his senses, and that is pure speculation on what Officer Escajeda said or felt. But what it implies is that there were no witnesses that could describe what happened or no witnesses available to the plaintiffs, which would mean that only Officer Escajeda and Mr. Ramirez were in that backyard. And there would be no possible way for the plaintiffs to know what Officer Escajeda thought, what he saw, what he felt, why he did something. That would be— So, again, you're questioning the credibility of the allegations in the complaint regarding what Escajeda saw or thought. Yes, sir. We are. You can't do that on a qualified immunity appeal at this stage. You can do it at trial, if you wish, to try to bring in witnesses to question what he thought or saw or what a reasonable person would have thought or saw, but you can't do that at the pleading stage. That's not what a qualified immunity appeal is all about. Well, Your Honor, a qualified immunity appeal would go to whether the facts are well pled, and speculation, as the Eighth Circuit pointed out in Colquet v. Roy, it has to be more than speculation. There has to be more—it has to be more than speculative that plaintiffs can recover. And when the gravamen of the complaint is pure speculation, then the complaint fails as a matter of law under the Iqbal, Twombly, and their progeny. The only paragraphs that include any actual facts are the ones we just spoke about, or if you go back to the paragraph 18, which is sort of a summary of facts, those are primarily conclusory. Those are the labels. Those are the conclusions that Iqbal and Twombly have said are insufficient to plead a claim under 1983 or in federal court period. If this issue were before us, is your position that there can't be a 1983 claim without eyewitnesses? No, sir. There has to be some—it wouldn't have to be eyewitnesses. It could be forensics. It could be a lot of things, but there's not going to be forensics. I thought—I mean, just even if we could address this issue, I thought the issue was the lighting. And the mother and father, even if they'd locked themselves—locked the boy out, they were fearful they locked him out, so they couldn't have seen the basketball net. It's perfectly plausible that they would have seen that it was quite light. So, therefore, the presumption is the officer would have seen that he's hanging himself when he tased him, and he says, no, it was, quote, very dark. And that's the essence of the dispute, but that's something that is a different narrative, factually. It's not—you're not arguing the qualified immunity legal standard as to excessive force and— —if you get to that circumstance. But you tell us we don't even get there. We're telling the court we don't believe that you get to that circumstance because the facts as pled are so speculative that they cannot form the basis of a proper complaint. Great. Thank you. And I wish I could tell you there was a lot more to this, but that is it. Thank you. All right. You saved time for rebuttal. Thank you. Yes, sir. All right. Mr. Benoit. Your Honors, it may please the court. The district court was right to deny the appellant's efforts to attack these facts as made up or as speculative with nothing more at this stage. Today we ask that the court dismiss this appeal or affirm in the alternative the district court's decision for the following three reasons. First, the appellants do not argue qualified immunity. Therefore, the issue is not properly before the court. They have not availed themselves of the court's jurisdiction. Second, the appellants have waived their argument to qualified immunity. Third, it is certainly our position, although I just heard counsel essentially admit that the facts as true would not avail them of qualified immunity, but we are prepared to argue the qualified immunity issue. We do believe that taken as true the facts establish a plausible excessive force claim. Well, do you agree that if we find your position correct and dismiss the appeal that the defendant would still be able to raise qualified immunity at some later stage of the proceeding? In other words, it hasn't been waived. Yes, Your Honor. They would be able to raise the issue at a later point in the proceeding in summary judgment with the facts on the record. Summary judgment or a trial, if there were a trial. Or a trial. If they properly, again, if they properly actually raise the qualified immunity issue. I'll turn to that first point regarding the jurisdictional question. The court knows the collateral order doctrine permits this court to have jurisdiction over qualified immunity analysis. And we agree that it requires an assessment of the facts as part of that analysis. We know that qualified immunity is an issue of law, but it's facts as applied to the law or the law as applied to the facts. But the courts are clear, and this circuit is clear, both pre and post Iqbal, that if you just mention qualified immunity, if you bring up an appeal on the basis of qualified immunity but solely attack the sufficiency of the pleadings, that's not an appropriate use of this court's collateral order of jurisdiction. And I think the case that we cited, Brown v. Miller, which is a case from this circuit, established that. That you cannot just raise an argument regarding the correctness of the plaintiff's facts and ask that the court make those decisions under qualified immunity analysis without actually addressing the qualified immunity analysis. If the two were inextricably tied, we might have appellant-dependent jurisdiction. Absolutely, Your Honor. I think that the appellants cite numerous cases in their reply in a string cite, two of which are from the Fifth Circuit, a number of which are from the First, the Eleventh. All of those cases are post-Iqbal. But if you look at each of those cases, you will see the court grappled with qualified immunity. They were addressing the qualified immunity analysis. This court in Atterbury v. Nokena, which was a 430F3D245, I believe we cited it, this court assumed jurisdiction pre-Iqbal, and the court said that resolution of the legal issues was appropriate because they had a qualified immunity analysis in front of them. But they distinguished that issue. I'm sorry, and they also were addressing the sufficiency of the pleadings as it related to the qualified immunity analysis. But they distinguished that from an earlier case, Smith v. Brunetzi, in which the circuit said, again, same thing. There was no legal argument regarding qualified immunity, and so it was not appropriate to simply address the facts or the ultimate merits of the case on a qualified immunity appeal. For those reasons, we do ask that the court find that the defendant has not properly asserted jurisdiction. And if the court were to assume jurisdiction, our second argument, which is fairly short, would be for the same reasons that they have waived jurisdiction. I think we provide that case law. But, of course, I want to turn to the elephant in the room, which is the allegations raised by the defendant that we've made facts up or that these are too speculative. I want to be clear about that. First of all, the standard that they cite, as the court pointed out, is simply not correct. Iqbal and Twombly state the court has to assume the veracity of statements that are made by a plaintiff. Now, the elephant in the room is this. We conducted a thorough pre-suit investigation. I think our plaintiff speaks to that. We have 21 pages of specific data and analysis. This is properly pled. However, the standard that they are citing is asking you to turn away from Iqbal, instead look under the rug, instead not assume the veracity of the facts. The court in Iqbal made clear there's only certain facts that you cannot assume the veracity of. Those facts are conclusory facts. Those are the only facts that are not entitled to the truth. Or I think they said fanciful facts, such as little green men landing from Mars and that kind of thing. I think there was some reference to that. Actually, Your Honor, I wanted to raise that issue because I think the phrase is extravagantly fanciful. But the court actually says, if you look at Iqbal, that they still have to accept those facts as true. If they're extravagantly fanciful, nonsensical, they still have the assumption of truth if they're specific and they're facts. Conclusory facts, the court states, they're not facts. They're threadbare recitals of the elements. And so those are the only facts that we can't assess. And, of course, after we assume the veracity of the facts, we move on to an analysis of qualified immunity or, in this case, whether something is plausibly entitled to relief. I think it's interesting the turn on the use of plausible in Appellant's argument. Plausible is not a qualifier to the facts. Plausible is a qualifier to the entitlement to relief and the connection between the two. And I think all of the courts that have made decisions on the pleadings since then have made that very clear. We certainly consider the facts outrageous. They're shocking from our perspective. That's why the lawsuit was brought. But that does not disentitle them from the truth. And there's no allegations regarding Mars either. I mean, I don't think they're that far outside the record. What the appellants are asking us to do or asking the court to do is go outside the record and decide whether somebody could have actually known this. First of all, Judge Higginson, you raised a couple things. One was the lighting, which we've pleaded that there was sufficient lighting. The second thing that you raised was whether the family had locked themselves inside. That's actually not in the pleadings. That was raised by argument of the counsel that's outside the record. So I would ask to go back to the briefing and take a look at that. These are hard cases for officers if you accept even just the following three elements. Suicidee, undisputed. Dusk, seems undisputed, dusk. And it's a single cop. Right? So if it were dark and he says show your hands, doesn't show the hands, then a taser, I guess you say the Newman case is the best one on excessive force tasing. Yes, if we ever get there. But these have tragic and difficult ingredients for an officer depending on how the facts play out. They absolutely do, Your Honor, although I think that the use of a taser in the situation of somebody who is hanging himself, who is restrained, clearly unarmed, and is not fleeing, not resisting arrest, and obviously there's no evidence that any commands were provided. There's no evidence in the pleadings that any commands were provided to them, much less whether it would have been reasonable for somebody who was hanging themselves to respond to that. There's no doubt that this situation is difficult. I think the other issue is why a single officer was responding to a call like this. I think that's something that's more relevant to the Monell claim, which we'll address in the facts. But I would agree that if we look at the clearly established case law, and I'll go there just because you raised it. I'm not saying you should at all. But Newman v. Guidry in that line of cases, what they really look at, and especially comparing them with Carroll v. Ellington in samples, is the amount of time the officer has before using the taser. In each of those cases you have somebody who's unarmed, not resisting arrest, sometimes potentially a fact issue regarding whether they're resisting arrest or refusing to comply with commands, but there's always some sort of interaction that the officers tried to use some level of negotiation. In this case, on the pleadings, that's simply not there. It was an immediate use of the taser as soon as he found somebody who was, again, unarmed, not fleeing, and there's no evidence that there were any commands that were complied with or not complied with. So I do believe that this is clearly in the Guidry line of cases, Ramirez v. Martinez, and I think Massey v. Wharton is an unpublished case, but it's a similar circumstance. Somebody driving an ATV encounters two officers. He gets conflicting directions, follows one of the officers' directions, and is immediately tased. It's the time between the encounter and the use of the taser, the escalation of force, that really distinguishes that from a situation like in Galvan v. San Antonio where you had some effort to negotiate prior and there was measured and ascending use of force in the face of what the officer was facing. The facts you have before you, as I mentioned, we do believe that the facts, as alleged, Officer Escajeda's actions violated Mr. Ramirez's clearly established rights and did constitute excessive unreasonable force for those reasons, although it sounds, again, like the appellant is agreeing with us on that, so I don't want to waste the Court's time by rehashing that, that as alleged we have complied with the Graham v. Conner factors, and as I mentioned, we have a situation where it was clearly established as of 2015 in the case law previously. For those reasons, Your Honor, we do request that the Court dismiss or in the alternative affirm the District Court's decision to deny the defendant's motion to dismiss under 12b-6 and under a qualified immunity standard. All right, thank you. Mr. Darnell, you've saved some time for rebuttal. Yes, Your Honor. On the jurisdictional issue, we believe that there clearly is jurisdiction in this Court. As the United States Supreme Court pointed out in the Iqbal opinion, May 18th of 2009, the sufficiency of the pleadings is both inextricably intertwined with and directly implicated by a qualified immunity defense. Those two go together. The case that the appellee relied upon for the jurisdictional issue was Club Retro v. Hilton, which had been decided 13 days before Iqbal and was effectively overruled by Iqbal. So we don't believe that that is good law. This is a qualified immunity argument. It is different than any other qualified immunity argument I have ever made because in this particular case, appellees alleged everything through the eyes of the officer. Normally, in a complaint, what is alleged is that this happened, this happened, this happened, officer responded, this happened, shots were fired, taser was fired, whatever it is. Not that sentence after sentence of officer saw, officer saw, officer saw, officer saw. If it is alleged, in effect, from a third-person perspective, those could be facts. But I think the problem is that there was no one to allege those facts. Going back to your question about does there have to be a witness, I don't believe there has to be a witness. There is more than one way to skin a cat, as my mother always told me, but there has to be something for the plaintiffs to hang their hat on saying this happened, and it has to be, as the Eighth Circuit said, more than speculation. Your problem, Mr. Darnell, is this is just too early a stage in the proceeding. Opposing counsel has acknowledged correctly that you don't waive qualified immunity even if you lose this appeal. It can be raised on summary judgment after appropriate discovery, or even if you don't prevail there, it can be raised at trial. The problem now is that this can be viewed as simply a question of credibility at the motion to dismiss stage, and you're unlikely to prevail on that. I think you need to just satisfy yourself that qualified immunity can be raised later, and if the facts there favor your client, you'll have every opportunity to present them. Yes, sir, I understand that, and I agree that we have at least two more bites at the qualified immunity apple, but because this is based on the pleadings, and the pleadings in this case are unique, we believe that they simply don't meet the Iqbal-Twombly standard. Thank you. Thank you. Your case is under submission, and the court will take a brief recess before hearing the final two cases.